**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: SARAH A. MORRIS,<br><br>Debtor, | |
| SARAH A. MORRIS,<br><br>Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Appellee. | NO. 1:25-CV-09083<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Debtor Sarah Morris did not timely file income tax returns for tax years 2005 and 2006, so the Internal Revenue Service executed returns on her behalf and assessed tax liability accordingly. AR. 65, Summary Judgment Op. at 3–4; R. 4-2, Record on Appeal at 525–26.[1] Years later, Morris petitioned for relief under Chapter 13 of the Bankruptcy Code. Summary Judgment Op. at 2; Record on Appeal at 524. The question presented in this appeal is whether Morris's tax debts for the amounts

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Citations to the adversary-proceeding docket are "AR." *See Morris v. United States*, No. 23-ap-00239 (Bankr. N.D. Ill.). Citations to the underlying bankruptcy docket are "BR." *See In re Morris*, No. 14-bk-23125 (Bankr. N.D. Ill.). Because there is no dispute about the material facts and this appeal boils down to a question of law, the Court cites the opinion below for the factual background, which the bankruptcy judge accurately summarized. For convenience, the Court parallel cites both the pagination of the summary judgment opinion as it appears on the adversary-proceeding docket and the pagination as it appears in the record on appeal.

assessed by the IRS are nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i), which bars the discharge of "any debt … for a tax … with respect to which a return … was not filed." Answering "yes," the Bankruptcy Court granted the government's motion for summary judgment and denied Morris's. Summary Judgment Op. at 8–9; Record on Appeal at 530–31. For the reasons explained in this Opinion, the Court affirms the decision of the bankruptcy court.

## I. Background

### A. Morris's Tax Filings and Assessments

Morris compiled income-tax debts for various years before filing for Chapter 13 relief, but only tax years 2003, 2005, and 2006 are relevant to this adversary proceeding. Starting with tax year 2003, Morris did not timely file a return. Summary Judgment Op. at 3; Record on Appeal at 525. So in 2007, the IRS created a return under 26 U.S.C. § 6020(b), which authorizes the IRS to execute a return on behalf of taxpayers who fail to do so. Summary Judgment Op. at 3; Record on Appeal at 525; *see* 26 U.S.C. § 6020(b)(1) ("If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, … the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise."). Based on that return, the IRS assessed income tax of $9,212. Summary Judgment Op. at 3; Record on Appeal at 525. Two years later (and about five years after the deadline), Morris filed her own Form 1040 for tax year 2003, reporting an additional $8,972 in tax liability. Summary Judgment Op. at 3; Record on Appeal at 525.

Moving to tax year 2005, Morris again did not file a return on time. Summary Judgment Op. at 4; Record on Appeal at 526. The IRS thus had to execute its own return on her behalf under § 6020(b), which yielded an assessment of $5,053 in February 2009. Summary Judgment Op. at 4; Record on Appeal at 526. Later that year, Morris filed a (three-year-late) Form 1040 for tax year 2005, reporting additional tax liability of $2,286. Summary Judgment Op. at 4; Record on Appeal at 526.

The same story played out for tax year 2006. After Morris failed to file a return, the IRS executed one for her under § 6020(b) and then assessed $5,820 in tax liability in February 2009. Summary Judgment Op. at 4; Record on Appeal at 526. In July 2009, about two years after the deadline, Morris filed a Form 1040, which reported $3,522 of additional tax liability. Summary Judgment Op. at 4; Record on Appeal at 526.

**B. Bankruptcy Proceedings**

In 2014, Morris petitioned for relief under Chapter 13 of the Bankruptcy Code. Summary Judgment Op. at 2; Record on Appeal at 524; *see In re Morris*, No. 14-bk-23125 (Bankr. N.D. Ill.). Among Morris's debts were unpaid income taxes from 2003, 2005, and 2006. Summary Judgment Op. at 2; Record on Appeal at 524; *id.* at 35–36 (IRS Proof of Claim). Over the course of Morris's 60-month Chapter 13 plan, she paid off a small portion of her 2003 taxes and none of her 2005 or 2006 taxes. Summary Judgment Op. at 2; Record on Appeal at 524. When the Bankruptcy Court granted Morris a discharge under 11 U.S.C. § 1328(a) and closed her case in 2019, however,

Morris believed her tax debts were at last behind her. Summary Judgment Op. at 2; Record on Appeal at 524; BR. 82, Discharge Order.

The IRS disagreed. In November 2019, it issued notices alleging that Morris remained liable for around $11,000, $10,000, and $12,000 in unpaid taxes for tax years 2003, 2005, and 2006, respectively. Summary Judgment Op. at 2; Record on Appeal at 524; *id.* at 23–27. The IRS then seized various overpayments and refunds to which Morris otherwise would have been entitled, applying them to her outstanding balance for tax year 2003. Summary Judgment Op. at 2; Record on Appeal at 524.

Morris moved to reopen her Chapter 13 case in July 2023 for the purpose of filing an adversary complaint against the IRS. Summary Judgment Op. at 3; Record on Appeal at 525; BR. 87, Mot. to Reopen. After that motion was granted, BR. 91, Morris filed an adversary complaint against the United States seeking, as relevant here, a determination that her liability to the extent not paid as of the petition date was and is fully discharged. AR. 1, Adversary Compl. at 8. The United States counterclaimed for a contrary determination—that is, for a determination that Morris's tax debts for 2005 and 2006 are nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i). AR. 12, Gov.'s Answer and Counterclaim at 17–18.[2]

Less than two months after the pleadings closed, and without taking any discovery, Morris moved for summary judgment on both her adversary complaint and the government's counterclaim. AR. 36, Morris Mot. Agreeing that no material facts

[2]The government's counterclaim had another count, but the parties jointly moved to dismiss it below. AR. 45, Joint Mot.

were in dispute, the government cross-moved for summary judgment on its counterclaim. AR. 46, Gov.'s Mot. In a thorough opinion, the Bankruptcy Court held that the tax debts in dispute were nondischargeable, so it denied Morris's motion and granted the government's. Summary Judgment Op. at 8–9; Record on Appeal at 530–31. Morris filed a motion under Civil Rule 59(e) and Bankruptcy Rule 9023 to alter or amend the judgment, AR. 66, which the Bankruptcy Court denied, AR. 79. Morris timely appealed. R. 1, Notice of Appeal.

## II. Legal Standard

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. We review de novo the bankruptcy court's grant of summary judgment. *Dick ex rel. Amended Hilbert Residence Maint. Tr. v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006).

"Because Federal Rule of Bankruptcy Procedure 7056, which governs summary judgment, incorporates by reference Federal Rule of Civil Procedure 56, the familiar summary judgment standards generally applicable to civil actions control here." *In re Greenpoint Tactical Income Fund LLC*, 168 F.4th 1002, 1006 (7th Cir. 2026). Under those standards, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and

draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

At a high level, Morris challenges the decision below on two grounds. She primarily argues that the disputed debt is dischargeable under § 523(a), which the Bankruptcy Court supposedly misinterpreted. R. 13, Appellant's Br. at 17–52. She also contends the Bankruptcy Court committed procedural errors in deciding the cross-motions for summary judgment. *Id.* at 52–56.[3]

[3] Morris also asserts that the Bankruptcy Court erred in denying her motion to dismiss the government's counterclaim for failure to state a claim, but her argument consists of just four undeveloped bullet points. Appellant's Br. at 56–57. Because "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived," the Court need not address this issue. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (cleaned up). In any event, Morris's argument merely regurgitates her position on summary judgment, so the Court's rejection of the latter disposes of the former. *See infra* Section III.A.

Before taking up these contentions, the Court clarifies what is and is not at issue. First, the government concedes that the *additional* tax liability that Morris reported on her post-assessment Forms 1040 *is* dischargeable. R. 23, Appellee's Br. at 43, 49. In other words, the government seeks a determination of nondischargeability only for the amounts assessed by the IRS following the § 6020(b) returns it executed. *Id.* at 4, 8–9, 42, 44, 49; Gov.'s Answer and Counterclaim at 17–18. Second, tax year 2003 is no longer at issue. After Morris won an administrative appeal, the IRS abated her tax liability for that year (so it is now zero), and the government concedes "that it must take any post-petition refunds that were offset to Morris's 2003 year and reapply those to 2005 and 2006." Appellee's Br. at 8 n.6; *see* Summary Judgment Op. at 4 n.7; Record on Appeal at 526 n.7. Taking these two points together, what remains in dispute is the dischargeability of the amounts assessed by the IRS following its § 6020(b) returns for tax years 2005 and 2006.

### A. Dischargeability

Under 11 U.S.C. § 1328(a), a Chapter 13 debtor who makes all required payments is generally entitled to "a discharge of all debts provided for by the plan." This rule has exceptions, however, one of which bars the discharge of "any debt … for a tax … with respect to which a return … was not filed." *Id.* § 523(a)(1)(B)(i).

For decades, the Bankruptcy Code did not define the term "return," so courts applying § 523(a) had to fill the gap. In a leading decision, the Sixth Circuit looked to tax law to do so, reasoning that it is unlikely "the Bankruptcy Code sought to encompass as a return any document … that would not qualify as a return under the

applicable tax law." *In re Hindenlang*, 164 F.3d 1029, 1033 (6th Cir. 1999). Recognizing that the Internal Revenue Code does not itself define "return,"[4] *id.* at 1032–33, the Sixth Circuit adopted a four-part test developed by the United States Tax Court in *Beard v. Commissioner*, 82 T.C. 766 (1984), and derived from Supreme Court tax precedents. *Hindenlang*, 164 F.3d at 1033–34; *see Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930); *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934). Under this test, a document qualifies as a "return" if it (1) purports to be a return, (2) is executed under penalty of perjury, (3) contains sufficient data to allow calculation of tax, and (4) "represent[s] an honest and reasonable attempt to satisfy the requirements of the tax law." *Hindenlang*, 164 F.3d at 1034 (cleaned up). Other circuits followed suit, adopting the *Beard* test to assess whether a document qualifies as a "return" under § 523(a). *See, e.g.*, *In re Moroney*, 352 F.3d 902, 905 (4th Cir. 2003); *In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir. 2000).

The Seventh Circuit joined this chorus in *In re Payne*, 431 F.3d 1055 (7th Cir. 2005), which confronted the very question before this Court: "whether a debtor may obtain a discharge in bankruptcy from a tax debt owed to the Internal Revenue Service if he failed to file a return until after the IRS assessed the tax that he owed." *Id.* at 1056. The court answered "no"—at least absent "circumstances beyond a

---

[4]Morris insists that cases like *Hindenlang* "inexplicably and erroneously declare that the Internal Revenue Code contains no definition of 'return'!" Appellant's Br. at 30–31. (The exclamation point is one of *seven* in Morris's brief. *Id.* at 23–24, 31, 35, 41, 58.) Yet Morris never points the Court to such a definition; she merely lists various *requirements* that apply to returns. *Id.* at 26–27. That is not surprising because the Tax Code, indeed, does not define the term. *See, e.g.*, *Appleton v. Comm'r*, 140 T.C. 273, 284 (2013) ("The [Tax] Code does not define what constitutes a return.").

taxpayer's control" causing the tardiness—on the rationale that a post-assessment return does not constitute "a reasonable endeavor to satisfy [one's] tax obligations" and thus fails *Beard*'s fourth element. *Id.* at 1060, 1057. That was so, the Seventh Circuit explained, because "the main purpose of the requirement that taxpayers file income-tax returns" is "to spare the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him." *Id.* at 1057. A post-assessment return does not serve that purpose. *Id.*

Then Congress amended § 523(a). In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23—which the parties call "BAPCPA"—Congress defined the term "return" under § 523(a):

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

*Id.* § 714, 119 Stat. at 128–29 (codified at 11 U.S.C. § 523(a)(*)).[5]

According to Morris, this amendment worked a paradigm shift by requiring bankruptcy courts to define "return" by reference to tax law—the "applicable non-bankruptcy law." Appellant's Br. at 15, 17–18, 21–26. Because (in Morris's view) *Payne* and the other bankruptcy cases applying *Beard* supposedly did *not* define

[5]This definition is often referred to as the "flush language" or "hanging paragraph," as it appears in an unnumbered paragraph at the conclusion of § 523(a).

"return" according to tax law, Morris argues that Congress's amendment superseded these precedents. *Id.* at 24 n.10, 25–26. Given the statutory amendment, Morris reasons that all courts must take a fresh look at the statute.

On one level, Morris's point is indisputable: *Payne* interpreted § 523(a) before there existed a definition of "return," and now Congress has defined the term, so the Court must apply that definition. But the Court agrees with the several circuits to have held that even under the amended statute, a Form 1040 must satisfy *Beard* to qualify as a "return." *See In re Giacchi*, 856 F.3d 244, 247 (3d Cir. 2017) ("[W]e join our sister circuits in applying *Beard* … , which sets forth 'the requirements of applicable nonbankruptcy law …." (quoting 11 U.S.C. § 523(a)(*))); *In re Justice*, 817 F.3d 738, 743–44 (11th Cir. 2016); *In re Smith*, 828 F.3d 1094, 1096 (9th Cir. 2016); *see also* 4 Collier on Bankruptcy ¶ 523.07[3][a] (16th ed. 2026) (endorsing this approach).[6] The reason is simple: *Beard* is a decision of the United States Tax Court interpreting *tax* law, so when Congress tethered the definition of "return" to tax law (as the "applicable nonbankruptcy law"), Congress effectively incorporated *Beard* into

[6]Morris notes that unlike in this case, the parties in *Smith* agreed that *Beard* remained applicable under the statutory definition of "return." Appellant's Br. at 41–42; *Smith*, 828 F.3d at 1096 ("[B]oth parties … agree that [*Beard*]'s four-factor test still applies."); *see also Justice*, 817 F.3d at 743 (same). But courts need not "accept an interpretation of a statute simply because it is agreed to by the parties," as the court's ultimate "task is to construe what Congress has enacted." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 56 (2006) (cleaned up). Had Congress truly abrogated *Beard*'s relevance, it is hard to imagine the Ninth and Eleventh Circuits applying it merely because of the parties' suggestion. And neither court expressed any reservations about applying it. *See Justice*, 817 F.3d at 743 (noting that "all courts to consider the issue[] agree that the term 'applicable nonbankruptcy law' incorporates the *Beard* test"); *Smith*, 828 F.3d at 1096 (noting that "several of our sister circuits agree" *Beard* still applies, and that "the Tax Court has not wavered in its application of this common-law test").

the definition of "return." That means *Payne*, which applied *Beard*, is controlling for all intents and purposes.

This result should come as little surprise. After all, the precedents on which *Payne* relied explicitly stated that they were looking to *tax* law to define "return." *See Hindenlang*, 164 F.3d at 1032 ("We think it is appropriate to look to the Internal Revenue Code to determine the proper definition of return."); *Hatton*, 220 F.3d at 1060 ("Because the Bankruptcy Code uses the term 'return' without providing a definition and there is no reason to presume that Congress intended the term to have a different meaning under the Bankruptcy Code than under the [Internal Revenue Code], we adopt the tax definition in determining whether Hatton's tax liabilities are dischargeable."). It is little wonder, then, that Congress's direction to apply tax law kept these precedents intact. The same goes for *Beard* itself, which the United States Tax Court still regularly applies in tax cases to determine whether a document constitutes a "return." *See, e.g.*, *Supinger v. Comm'r*, 2025 WL 2544410, at *5 (T.C. Sep. 4, 2025); *Fowler v. Comm'r*, 155 T.C. 106, 111 (2020). So *Beard* is part of "the requirements of applicable nonbankruptcy law," and *Payne*'s application of it remains binding.

It is also notable that the only approach besides *Beard* to gain appellate traction in the years since Congress defined "return" is the aptly named one-day-late rule, under which *no* late-filed Form 1040 can qualify as a "return." *See In re Fahey*, 779 F.3d 1, 4–5 (1st Cir. 2015); *In re Mallo*, 774 F.3d 1313, 1316 (10th Cir. 2014); *In re McCoy*, 666 F.3d 924, 932 (5th Cir. 2012); *cf. Payne*, 431 F.3d at 1060 (Easterbrook,

J., dissenting) ("After the 2005 legislation, an untimely return can[]not lead to a discharge ...."). Under that approach, the nondischargeability of Morris's debts would be beyond dispute, as she filed her Forms 1040 years late. In other words, no circuit has adopted a test under which Morris would prevail. But the Court need not decide whether the one-day-late rule (which even the government disavows, Appellee's Br. at 36) is a correct interpretation of the statutory phrase "applicable filing requirements"; it suffices for this case to conclude that "the requirements of applicable nonbankruptcy law" incorporates *Beard*.

Against the conclusion that *Payne* controls, Morris argues that the statutory definition of "return" renders the timeliness of a Form 1040 irrelevant—which would be irreconcilable with *Payne* if true. Appellant's Br. at 18–20. She first notes that the only exception to the definition of "return" is a § 6020(b) return executed by the IRS. *Id.* at 19; *see* 11 U.S.C. § 523(a)(*). Because the expression of one thing in a statute generally implies the exclusion of others, *see Jones v. Hendrix*, 599 U.S. 465, 477–78 (2023), Morris argues that the Court may not graft an exception for post-assessment Forms 1040 onto the statute, Appellant's Br. at 19. But this framing assumes the conclusion. The reason that a post-assessment Form 1040 is not a "return" is that it fails *Beard* and thus does not meet the requirements of applicable nonbankruptcy law. *See Payne*, 431 F.3d at 1057. There is no need to create an exception for something that fails the rule. So Morris can only make her negative-inference argument by incorrectly assuming that her years-late Forms 1040 constitute "returns."

Morris also argues that by explicitly counting § 6020(a) returns—which are necessarily late, *see* 26 U.S.C. § 6020(a)—as "returns," Congress clarified that the timeliness of a return is irrelevant, further undermining *Payne*. Appellant's Br. at 19. But the fact that a discrete category of late-filed returns qualifies as "returns" says nothing about whether *all* late-filed returns so qualify. If anything, one could draw the opposite conclusion. In any event, Congress's decision to expressly address § 6020(a) and (b) returns—separate and apart from the general rule it prescribed—seems to suggest nothing more than Congress's desire to definitively resolve the treatment of those categories of returns under § 523(a), a matter on which courts had disagreed prior to the amendment. *See Mallo*, 774 F.3d at 1324 & n.4.

Morris next submits that the Bankruptcy Court's approach—that is, applying *Payne*—contradicts the Bankruptcy Code's overriding purpose of providing debtors a fresh start. Appellant's Br. at 57–61; *see, e.g.*, *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018). Putting aside that the Bankruptcy Code's policy is to "afford[] relief only to an *honest* but unfortunate debtor," *Appling*, 584 U.S. at 715 (emphasis added) (cleaned up),[7] this is essentially an argument that *Payne* was wrong the day it was decided—not an argument that Congress abrogated it. That is a position this Court is powerless to accept in a hierarchical judiciary. In any event, the Court is skeptical: "no statute pursues any single purpose at all costs." *Medina v.*

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025) (cleaned up). Nowhere is that clearer than in the provision at issue, § 523(a), which provides *exceptions* to the general rule of dischargeability. By making nondischargeable some tax debts but not others, Congress was evidently balancing the interests of the debtor and those of the government—not pursuing the former unconditionally.

In sum, the Court concludes that the Seventh Circuit's decision in *Payne* remains controlling because by applying *Beard*, *Payne* applied "the requirements of applicable nonbankruptcy law." 11 U.S.C. § 523(a)(*). Morris's various efforts to demonstrate that the amended statute cannot be reconciled with *Payne* fall short. Morris does, however, offer a potential distinction from *Payne*: her post-assessment Forms 1040 reported *more* tax liability than did the IRS's § 6020(b) returns. This matters, according to Morris, both because (a) the IRS evidently deemed Morris's Form 1040 useful, as it assessed the additional tax liability she reported, and (b) no tax decision holds that a Form 1040 can be accepted by the government as a "return" for one portion of the reported tax but not another. Appellant's Br. at 16, 53–54.

As an initial matter, it is not clear that this distinction is relevant where, as here, the government is seeking a determination of dischargeability *only* with respect to the portion of Morris's 2005 and 2006 taxes represented by the § 6020(b) returns. In other words, the government conceded that the additional tax reported in Morris's tardy filings is dischargeable. Given that, *Payne* seems to be on all fours with this case.

In any event, neither *Payne* nor a fresh look at the statute supports Morris's proposed rule that a taxpayer's *entire* tax debt becomes dischargeable when she files a late Form 1040 that reports more tax liability than an earlier § 6020(b) return did. Under *Payne*, the reason that a post-assessment return fails *Beard*'s fourth element is that once the IRS has estimated the taxpayer's liability on her behalf, the taxpayer has "defeat[ed] the main purpose of the requirement that taxpayers file income-tax returns: to spare the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him." *Payne*, 431 F.3d at 1057. "A return filed after the authorities have borne that burden," *Payne* explained, "does not serve the purpose of the filing requirement." *Id.* With regard to the debt at issue in this case, that rationale applies with full force. Morris's failure to file Forms 1040 until years after they were due forced the IRS to take on the burden of estimating her income-tax liability. That is no easy task, and if Morris were right—if her belated reporting of additional liability rendered the entire tax debt nondischargeable—Morris would senselessly be the beneficiary of the IRS's (understandably) imperfect estimate. *See Giacchi*, 856 F.3d at 248–49 (rejecting this illogical outcome). And as for the fact that the IRS found Morris's return useful (insofar as it assessed additional tax liability based on it), *Payne* again supplies the rebuttal: "The legal test is not whether the filing of a purported return has some utility for the tax authorities, but whether it is a *reasonable* endeavor to satisfy the taxpayer's obligations, as it might be if the taxpayer had tried to file a timely return but had failed to do so because of an error by the Postal Service." 431 F.3d at 1058 (emphasis in original).

Morris's proposal fares no better under a fresh look at the statutory text. For one thing, her argument is hard to square with Congress's express exclusion of § 6020(b) returns from the definition of "return." For another, under Morris's position, whether the taxpayer-debtor can discharge her tax debts essentially turns on whether the IRS, when forced to reconstruct the taxpayer's liability without her assistance for a § 6020(b) return, over- or underestimated. But the structure of § 523(a)(1)(B)(i) and (a)(*) puts dischargeability squarely in the taxpayer-debtor's hands by making the touchstone whether she filed a return. The Bankruptcy Code exists to give the "*honest but unfortunate*" debtor a fresh start, after all. *Appling*, 584 U.S. at 715 (emphasis added) (cleaned up). That structure, and that background principle of bankruptcy, cannot be squared with a rule whereby the dischargeability of a tax debt depends on what is essentially random: did the IRS over- or underestimate the debtor's liability in its § 6020(b) return?

In conclusion, the disputed tax debts from 2005 and 2006 are nondischargeable under *Payne* and § 523(a)(1)(B)(i).[8]

---

[8]For completeness, the Court notes that the government advances an alternative position—first articulated in an IRS Chief Counsel Notice—under which it is irrelevant whether Morris's tardy Forms 1040 constituted "returns." Appellee's Br. at 4; *see* I.R.S. Chief Counsel Notice 2010-016, 2010 WL 3617597 (Sep. 2, 2010). In a nutshell, the government focuses on the creation of an enforceable debt; on its view, if at the time the IRS assesses a tax debt no Form 1040 has been filed, then there is—and always will be—a debt for which no return has been filed, regardless of any later filing (whether a "return" or not under *Beard*). *See* Appellee's Br. at 15–16, 30–34; *see also* Notice 2010-016, 2010 WL 3617597. The IRS's position has not gained traction in the courts. *See, e.g.*, *Mallo*, 774 F.3d at 1325–26 (rejecting it); *In re Martin*, 542 B.R. 479, 491 (B.A.P. 9th Cir. 2015) (same); *In re Rhodes*, 498 B.R. 357, 362 (Bankr. N.D. Ga. 2013) (same). This Court, too, is skeptical. Under the Bankruptcy Code, "debt" means "liability on a claim," 11 U.S.C. § 101(12), and "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

### B. Summary Judgment Procedure

Morris also argues that, even if *Payne* controls and her asserted distinction is rejected, the Bankruptcy Court erred in granting the government's cross-motion for summary judgment. She contends that *Beard*'s fourth element—whether the taxpayer made "an 'honest and reasonable' endeavor to comply with the law," *Payne*, 431 F.3d at 1057—is a both a question of fact and an issue on which the government has the burden. Appellant's Br. at 52–56. Because the government did not present evidence of Morris's reasons for filing late, Morris says summary judgment was inappropriate. *Id.* at 54–55. Morris does not deny that *she* too failed to advance any evidence of her reasons of filing late; rather, she explains that she would have presented those reasons had the government met its burden, but because it did not, Morris had nothing "to rebut and no need … to present any evidence." R. 24, Appellant's Reply at 23. The government argues that *Payne* provides a per se rule: post-assessment filings always fail *Beard*'s fourth element, regardless of the debtor's subjective intent or reasons. Appellee's Br. at 50–55.

Neither side has it exactly right. On one hand, the government overstates *Payne*'s holding. The Seventh Circuit explicitly stopped short of holding that a post-

---

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," *id.* § 101(5)(A). Because substantive tax law, not the assessment process, is what gives "the United States … a *right to payment* of income tax for each year (although unmatured and unfixed)," *Rhodes*, 498 B.R. at 362 (emphasis in original), "the tax debt within the meaning of the Bankruptcy Code preexists … the issuance of the IRS assessment," *Martin*, 542 B.R. at 491. In other words, it appears the assessment process is necessary to collect, but not to create, the debt. For the reasons already provided in this Opinion, however, the Court need not definitively resolve this question.

assessment return can *never* constitute an honest and reasonable effort to satisfy the law, noting that there may "be circumstances beyond a taxpayer's control that prevented him from filing a timely return, or even from asking for an extension of the time to file, before the tax was assessed." *Payne*, 431 F.3d at 1059–60.

On the other hand, Morris misapprehends the role of such circumstances in the analysis. Though it does not use these words, *Payne*'s reasoning demonstrates that a post-assessment return is rebuttably presumed to fail *Beard*'s fourth element; the government need not affirmatively establish the taxpayer's *lack* of extenuating circumstances to establish nondischargeability under § 523(a)(1)(B)(i). What makes this clearest is that the record in *Payne* itself was silent on Payne's reasons for being tardy, but the court nevertheless directed the Bankruptcy Court to deny discharge—a judgment incompatible with Morris's theory. *See* 431 F.3d at 1057, 1060. What's more, *Payne* repeatedly put the onus on the taxpayer, Payne—not the government—to provide an excuse for the delay. *See id.* at 1057 ("Payne offers no excuse for having failed to file his 1986 return until six years after it was due."); *id.* at 1060 (although "circumstances beyond a taxpayer's control that prevented him from filing a timely return" could be relevant, "Payne … offered no excuse"). So under *Payne*, a post-assessment return paired with a record devoid of extenuating circumstances suffices to establish nondischargeability. And that is just what the Bankruptcy Court had before it.

Both below (when Morris filed a motion to alter or amend the judgment) and on appeal (in asking the Court to remand for further discovery), Morris has

essentially asked for a second bite at the apple. But her complaints with the court below are all traceable to her own litigation strategy. It was Morris who moved for summary judgment, without taking any discovery, less than two months after the pleadings closed. Morris Mot. And it was Morris who decided not to present evidence of her reasons for belatedly filing because she was convinced the government had failed to carry its burden. Appellant's Reply at 23. Morris was not entitled to take the two-step, whack-a-mole approach that she did: withhold purportedly material evidence at summary judgment on the assumption that the court would accept her legal theory, and then, when the court accepted the government's, move to alter or amend the judgment on the basis of this purportedly material evidence. *See Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) ("[Civil Rule 59(e)] does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.").

## IV. Conclusion

The Bankruptcy Court's decision is affirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2026